UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2013 Grand Jury

| UNITED STATES OF AMERICA, | No. CR 14- CR14-0567 |
|---|---|
| Plaintiff, | INDICTMENT |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done; 18 U.S.C. § 371: Conspiracy to Pay and Receive Health Care Kickbacks in Violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A) and (2)(A)] |
| HOVIK SIMITIAN, aka "John," and ANAHIT SHATVORYAN, aka "Anna," aka "Anne," | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.  INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.  Columbia Medical Group, Inc. ("Columbia") was a medical clinic located at 1211 N. Vermont Avenue, Suite 205, Los Angeles, California 90029, within the Central District of California.

2. Life Care Medical Clinic, A Professional Corporation ("Life Care") was a medical clinic located at 1211 N. Vermont Avenue, Suite 207, Los Angeles, California 90029, within the Central District of California.

3. Safe Health Medical Clinic, A Professional Corporation ("Safe Health") was a medical clinic located at 1211 N. Vermont Avenue, Suite 207, Los Angeles, California 90029, within the Central District of California.

4. In practice, Columbia, Life Care, and Safe Health (collectively, the "Clinics") operated as a single medical clinic.

5. Defendant HOVIK SIMITIAN, also known as ("aka") "John" ("SIMITIAN"), co-managed and co-operated the Clinics.

6. Defendant ANAHIT SHATVORYAN, aka "Anna," aka "Anne" ("SHATVORYAN"), co-managed and co-operated the Clinics.

7. A co-conspirator known to the Grand Jury ("CC-1") was a "marketer" who recruited Medicare beneficiaries for the Clinics in exchange for illegal kickbacks.

The Medicare Program

8. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

///

///

9.  Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health insurance claim number ("HICN").

10. Physicians and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for processing and payment of claims.

11. A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

12. Most providers submitted their claims electronically pursuant to an agreement they executed with Medicare in which the providers agreed that: (a) they were responsible for all claims submitted to Medicare by themselves, their employees, and their agents; (b) they would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) they would submit claims that were accurate, complete, and truthful.

13. Medicare generally reimbursed a provider for physician services that were medically necessary to the health of the beneficiary and were personally furnished by the physician or the physician's employee under the physician's direction.

///

//

3

14. CMS contracted with regional contractors to process and pay Medicare claims. Noridian Administrative Services ("Noridian") was the contractor that processed and paid Medicare claims involving Medicare Part B physician services in Southern California from approximately September 2013 to present. Prior to Noridian, the contractor for Part B physician services was Palmetto GBA from 2009 to 2013. Prior to Palmetto GBA, the contractor for Part B physician services was National Health Insurance Company from 2006 to 2009.

15. To bill Medicare for physician services, a provider was required to submit a claim form (Form 1500) to the Medicare contractor processing claims at that time. When a Form 1500 was submitted, usually in electronic form, the provider was required to certify: (a) that the contents of the form were true, correct, and complete; (b) that the form was prepared in compliance with the laws and regulations governing Medicare; and (c) that the services being billed were medically necessary.

16. A Medicare claim for payment was required to set forth, among other things, the following: (a) the beneficiary's name and unique Medicare identification number; (b) the type of services provided to the beneficiary; (c) the date that the services were provided; and (d) the name and Unique Physician Identification number ("UPIN") of the physician who prescribed or ordered the services.

///
///
///

4

B. THE OBJECT OF THE CONSPIRACY

17. Beginning in or around February 2010, and continuing through in or around June 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants SIMITIAN and SHATVORYAN, together with CC-1 and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

C. THE MANNER AND MEANS OF THE CONSPIRACY

18. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

    a. On or about February 3, 2010, Columbia submitted an amended enrollment application to Medicare, which listed defendant SIMITIAN as an authorized official for Columbia.

    b. Columbia maintained a bank account at U.S. Bank, account number ***8070, and defendant SIMITIAN signed checks drawn on this account.

    c. On or about June 28, 2011, Life Care submitted an enrollment application to Medicare, which listed defendant SIMITIAN as a manager of Life Care.

    d. In or around June 2011, defendant SIMITIAN opened a bank account for Life Care at U.S. Bank, account number ***8504. Defendant SIMITIAN was the sole authorized signatory on this account.

    e. On or about August 1, 2011, Safe Health submitted an enrollment application to Medicare, which listed defendant SIMITIAN as a manager of Safe Health.

   f. On or about August 8, 2011, defendant SIMITIAN opened a bank account for Safe Health at U.S. Bank, account number ***5930. Defendant SIMITIAN was the sole authorized signatory on this account.

   g. Individuals known as "marketers," including CC-1, would travel throughout Southern California to recruit Medicare beneficiaries and take them to the Clinics. In order to induce the beneficiaries to visit the Clinics, the marketers, including CC-1, would promise to provide the beneficiaries with free durable medical equipment ("DME") or sometimes provide them with cash.

   h. The marketers, including CC-1, would bring Medicare beneficiaries to the Clinics. Defendants SIMITIAN, SHATVORYAN, and others known and unknown to the Grand Jury, would pay marketers, including CC-1, illegal kickbacks for bringing the Medicare beneficiaries to the Clinics.

   i. In order to conceal that the payments to the marketers were in exchange for referring Medicare beneficiaries to the Clinics, defendants SIMITIAN and SHATVORYAN would write on the Clinics' checks that the payments were for transporting the beneficiaries to the Clinics.

   j. At times, while the beneficiaries were at the Clinics, co-conspirators known and unknown to the Grand Jury, acting at the direction of defendants SIMITIAN and SHATVORYAN, provided the beneficiaries with certain medically unnecessary services, including blood draws, ultrasounds, and electrocardiograms ("EKGs"). At other times, the beneficiaries received no services.

k.  Defendants SIMITIAN, SHATVORYAN, and their co-conspirators would submit, and cause the submission of, false and fraudulent claims to Medicare for services that were not medically necessary and never actually provided to the Medicare beneficiaries.  These services included, among others, EKGs, studies of anorectal pressure generated by muscles surrounding the anus ("anorectal pressure tests"), nerve conduction tests, ultrasound scans and ultrasound examinations, and electronic assessments of bladder emptying.  The beneficiaries for which such false and fraudulent claims were submitted included M.R., F.D., J.E.B., O.E., E.R., M.S.C., R.L., M.H., M.D.J., J.C., M.D.E., M.R., A.A., G.H., and H.R.

l.  As a result of the submission of the false and fraudulent claims described above, Medicare made payments to bank accounts for Columbia, Life Care, and Safe Health described above.

19.  Between in or around February 2010, and in or around June 2014, defendants SIMITIAN, SHATVORYAN, and their co-conspirators submitted and caused the submission of approximately $4,526,791 in false and fraudulent claims to Medicare, resulting in Medicare payments of approximately $1,668,559.

COUNTS TWO THROUGH SEVEN

[18 U.S.C. §§ 1347, 2(b)]

A. INTRODUCTORY ALLEGATIONS

20. The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 16 and 18 through 19 of this Indictment as though set forth in their entirety herein.

B. THE SCHEME TO DEFRAUD

21. Beginning in or around February 2010, and continuing through in or around June 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants SIMITIAN and SHATVORYAN, together with CC-1 and others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C. MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

22. The fraudulent scheme operated, in substance, as described in paragraph 18 of this Indictment, which is hereby incorporated by reference as though set forth in its entirety herein.

D. EXECUTIONS OF THE FRAUDULENT SCHEME

23. On or about the dates set forth below, within the Central District of California, and elsewhere, defendants

8

SIMITIAN and SHATVORYAN, together with CC-1 and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully submitted and caused to be submitted to Medicare for payment the following false and fraudulent claims:

| COUNT | BENEFICIARY | CLAIM NUMBER | APPROX. DATE SUBMITTED | APPROX. AMOUNT OF CLAIM |
|---|---|---|---|---|
| TWO | M.R. | 551110281356170 | 10/08/2010 | $800 |
| THREE | H.R. | 551111024569520 | 08/19/2011 | $270 |
| FOUR | G.H. | 551812044503640 | 02/13/2012 | $270 |
| FIVE | F.D. | 551812117004020 | 04/26/2012 | $270 |
| SIX | F.D. | 551812123487170 | 05/02/2012 | $270 |
| SEVEN | A.A. | 551812317725430 | 11/12/2012 | $270 |

## COUNT EIGHT

[18 U.S.C. § 371]

A. INTRODUCTORY ALLEGATIONS

24. The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 16 and 18 through 19 of this Indictment as though set forth in their entirety herein.

B. OBJECT OF THE CONSPIRACY

25. Beginning in or around February 2010, and continuing through in or around June 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants SIMITIAN and SHATVORYAN, together with CC-1 and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to pay and receive kickbacks for patient referrals, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and (2)(A).

C. THE MANNER AND MEANS OF THE CONSPIRACY

26. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

   a. Marketers, including CC-1, would recruit Medicare beneficiaries to visit the Clinics.

   b. Defendants SIMITIAN and SHATVORYAN would pay, and cause to be paid, kickbacks to the marketers, including CC-1, in return for patient referrals that the Clinics would use to submit claims to Medicare.

///

///

///

D.   OVERT ACTS

27.   In furtherance of the conspiracy and to accomplish its object, defendants SIMITIAN and SHATVORYAN, together with CC-1 and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1: On or about July 22, 2011, defendants SIMITIAN and SHATVORYAN paid and caused to be paid kickbacks for patient referrals to the Clinics by CC-1 in the amount of $300 paid to CC-1.  This check was drawn upon Columbia's U.S. Bank account number ****8070 (check number #3158).

Overt Act No. 2: On or about October 5, 2011, defendants SIMITIAN and SHATVORYAN paid and caused to be paid kickbacks for patient referrals to the Clinics by CC-1 in the amount of $550 paid to CC-1.  This check was drawn upon Life Care's U.S. Bank account number ****8504 (check number #1109).

Overt Act No. 3: On or about January 26, 2012, defendants SIMITIAN and SHATVORYAN paid and caused to be paid kickbacks for patient referrals to the Clinics by CC-1 in the amount of $800 paid to CC-1.  This check was drawn upon Life Care's U.S. Bank account number ****8504 (check number #1394).

Overt Act No. 4: On or about February 12, 2013, defendants SIMITIAN and SHATVORYAN paid and caused to be paid kickbacks for patient referrals to the Clinics by CC-1 in the amount of $950 paid to CC-1.  This check was drawn upon Life Care's U.S. Bank account number ****8504 (check number #1910).

1  Overt Act No. 5: On or about February 27, 2013, defendants
2  SIMITIAN and SHATVORYAN paid and caused to be paid kickbacks for
3  patient referrals to the Clinics by CC-1 in the amount of $400
4  paid to CC-1.  This check was drawn upon Safe Health's U.S. Bank
5  account number ****5930 (check number #1541).

                                                A TRUE BILL

                                     /S/
                                     _____
                                     Foreperson

STEPHANIE YONEKURA
Acting United States Attorney

/s/ R.E. Dugdale

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GEJAA GOBENA
Deputy Chief, Fraud Section
United States Department of Justice

BEN CURTIS
Assistant Chief, Fraud Section
United States Department of Justice

BLANCA QUINTERO
ALEXANDER F. PORTER
Trial Attorneys, Fraud Section
United States Department of Justice